IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

NEWSPAPER GUILD OF ST. LOUIS,
LOCAL 36047, TNG-CWA,

    1015 Locust Street, Suite 1040
    St. Louis, MO 63101

    Plaintiff,

vs.                                                Case No.

ST. LOUIS POST DISPATCH, LLC,

    900 North Tucker Blvd.
    St. Louis MO 63101-1099

    Defendant.
_____

**COMPLAINT**

1. The Newspaper Guild of St. Louis, Local 36047, TNG-CWA ("Guild"), Plaintiff, brings this Complaint against the St. Louis Post Dispatch, LLC ("Employer"), Defendant, to compel arbitration of a pending grievance in accordance with the parties' collectively bargained grievance arbitration procedure.

**Jurisdiction and Venue**

2. The Complaint arises under, and jurisdiction is conferred upon this Court by virtue of, Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Section 185 [hereinafter "the Act"] and 28 U.S.C. Sections 1331 and 1337. Venue is proper in this District under 29 U.S.C. Section 185 and 28 U.S.C. Section 1391.

**The Parties**

3. The Guild, an unincorporated association, is a labor organization representing employees in an industry affecting commerce within the meaning of Section 301 of the Act, with its principal place of business in St. Louis, Missouri. At all times material hereto, the Guild has served as the exclusive bargaining representative of a bargaining unit of employees of the Employer, the publisher of *The St. Louis Post Dispatch*.

4. The Employer, a corporation organized under the laws of the state of Missouri, is an employer within the meaning of Section 301 of the Act, with its principal place of business in St. Louis, Missouri.

**The Facts.**

**The Parties' Collective Bargaining Relationship**

5. The Employer is engaged in the publication and printing of a daily newspaper, *The St. Louis Post Dispatch*.

6. At all times material hereto, the Guild has served as the exclusive bargaining representative of a bargaining unit of employees of the Employer. The bargaining unit includes employees in the editorial/news department, advertising department, accounting department, circulation department, information systems, marketing department, and purchasing department of the Post-Dispatch; the telephone operators, building service and maintenance workers in the building department; and certain employees within the Employer's production department.

7. The Guild and Employer are parties to a current collective bargaining agreement ("current CBA") which has an effective start date of March 28, 2010.

8. The parties had previously entered into a collective bargaining agreement ("Blue

contract") with stated effective dates of December 12, 1994 through January 9, 2003.  The Blue contract further provides for the resolution of grievances through a negotiated grievance-arbitration procedure.

### The Retiree Health Care Grievance Regarding Elimination of Employer-paid Coverage

9. Article XVI of the Blue contract provides, in pertinent part, that:

> The Employer agrees to provide for the term of this Agreement on retirement under the terms of the Joseph Pulitzer Pension Plan for each employee covered by this Agreement having ten (10) years or more of continuous service as an employee with the Employer immediately preceding the date of retirement, the group medical insurance benefits provided for in this Article for the retiree.  **The Employer shall pay the full premium for the employee's coverage only, for the remainder of retired employee's life.  It is understood and agreed that the benefits described herein shall remain in effect only for the duration of the retired employees' lifetime.  (Emphasis added.)**

Pursuant to this contractual provision, the Employer has previously provided group medical benefits ["retiree coverage"] to individuals who retired from employment in the Guild bargaining unit during the term of the Blue contract ["retirees" or "Blue contract retirees"].  Until it announced a change in late 2008, the Employer had paid 100% of the premium cost of the retiree coverage on behalf of the Blue contract retirees in accordance with Article XVI.  Effective January 1, 2009 through December 31, 2009 and through unilateral action, the Employer reduced its premium payment on behalf of the Blue contract retirees from 100% to 30%.  That premium reduction is the subject of a pending lawsuit between the parties in this Court in Case No. 4:09-cv-00412-RWS.

10. By letter of December 4, 2009, Ms. Jennifer Kivlin, Director of Human Resources for Lee Enterprises, the corporate parent of the Employer, informed the Blue contract retirees that the Employer would make the following unilateral changes to the retiree coverage for Blue

contract retirees effective January 1, 2010.  As of that date, the Employer would cease to pay any of the premium expense for retiree coverage of any Blue contract retirees.  Those Blue contract retirees not yet eligible for Medicare would be required to pay 100% of the plan premium in order to remain under the retiree coverage made available by the Employer.  Those Blue contract retirees eligible for Medicare would no longer have any access to any retiree coverage made available through the Employer.  Neither Ms. Kivlin nor the Employer provided a copy of the December 4, 2009 letter to the Guild or otherwise notified the Guild of the impending changes to retiree coverage.

### The Parties' Grievance-Arbitration Machinery

11. Article II of the Blue contract provides that a:

> grievance is ... a claim or dispute with the Employer by an employee or employees or by the Guild involving an alleged violation by the Employer of the terms of this Agreement.

12. Article II of the Blue contract contains procedures by which the Guild can move any unresolved grievance to arbitration.  In specific, Article II provides that:

> [i]f [a] grievance is not satisfactorily settled in accordance with the foregoing procedure, either party to this Agreement may, in writing, refer the grievance to arbitration ....

13. By letter of December 16, 2009 from Mr. Shannon Duffy, Guild Business Representative, the Guild grieved the Employer's failure and refusal to pay the full premium expense associated with the retiree coverage, and to provide substantially equivalent retiree coverage, claiming that it violated Article XVI of the Blue contract.

14. The Guild demanded that the Employer rescind the unilateral changes it made to the retiree coverage, and that it provide substantially equivalent retiree coverage, and pay the full premium expense of that coverage, citing Article XVI of the Blue contract.

15. By letter of December 18, 2009, the Employer asserted that the grievance:

> is not arbitrable because it involves a prior contract to the one currently in effect between the parties and because it involves retirees who are not represented by the union.

16. After the Employer denied the grievance, the Guild referred the grievance to a meeting of the parties' Joint Standing Committee, in accord with Article II of the Blue contract.

17. The Joint Standing Committee held a meeting regarding the grievance on January 8, 2010.

18. By letter of January 8, 2010, and within five (5) calendar days after the Joint Standing Committee meeting, the Guild notified Ms. Garcia that the Guild was moving its grievance to arbitration.

19. In accordance with the terms of the Blue contract, the Guild requested that the Federal Mediation and Conciliation Service send a proposed panel of arbitrators to the parties for their consideration. Thereafter, the Employer failed and refused to participate in the arbitrator selection process in accordance with FMCS procedures.

**The Employer's Unlawful Refusal to Arbitrate the Retiree Health Care Grievance**

20. The Employer has agreed in the Blue contract that a grievance is, *inter alia*, a claim by the Guild involving an alleged violation by the Employer of the terms of that agreement.

21. The Employer further agreed to arbitrate claims of an alleged violation of the terms of the Blue contract, when the parties are unable to resolve the grievance through the grievance

procedure.

22.  Disputes under expired collective bargaining agreements are arbitrable when the alleged rights in dispute accrued and/or vested under the expired collective bargaining agreement.

23.  Disputes under expired collective bargaining agreements are arbitrable when the collective bargaining agreement provides in express terms that the rights in dispute continue after the agreement's expiration.

24.  The Guild has alleged in its pending grievance that the Employer's elimination of fully paid and substantially equivalent retiree coverage violates Article XVI of the Blue contract.

25. Article XVI of the Blue contract provides:

> **The Employer shall pay the full premium for the employee's coverage only, for the remainder of retired employee's life.  It is understood and agreed that the benefits described herein shall remain in effect only for the duration of the retired employees' lifetime.  (Emphasis added.)**

As such, the contractual right of the retirees to continue to receive substantially equivalent retiree coverage at the Employer's premium expense pursuant to Article XVI accrued and/or vested during the term of the Blue contract.  Moreover, as the retirees' right to continue to receive retiree coverage at the Employer's premium expense continues "for the duration of the retired employees' lifetime" pursuant to Article XVI, such contractual right, by its express terms, is intended to continue in effect after the expiration of the Blue contract.  Thus, the Guild's grievance is arbitrable.

26.  The Guild has obtained the express consent, in writing, of most of the retirees to represent their interests, in court and in arbitration, with respect to their retiree coverage.  The Guild has standing to represent the retirees in its pending grievance and in this lawsuit regarding

retiree coverage.

27. As the parties have been unable to resolve the Guild's retiree health care grievance, the Guild timely referred the matter to arbitration under the auspices of the Federal Mediation and Conciliation Service, in accordance with the contractual grievance-arbitration machinery.

28. Nevertheless, the Employer has refused and continues to refuse to cooperate in the selection of an arbitrator or to arbitrate the Guild's retiree coverage grievance.

29. On information and belief, absent Court relief compelling the Employer to submit to the arbitration of the Guild's retiree coverage grievance, the Employer will continue to refuse to participate in the arbitration process and the Guild will be irreparably harmed.

## **LEGAL CLAIMS**

### **COUNT ONE**

30. The Guild repeats and realleges the allegations set forth in paragraph 1 through 29 above as if fully set forth herein.

31. The Guild's retiree coverage grievance constitutes a "claim or dispute with the Employer ... by the Guild involving an alleged violation by the Employer of the terms of this Agreement." As the grievance involves rights that accrued and/or vested under the terms of the Blue contract, and/or involves rights which the parties expressly intended to remain in effect after the expiration of the Blue contract, the retiree coverage grievance is arbitrable.

32. The Employer's failure and refusal to proceed to arbitration constitutes a violation of the parties' agreement to arbitrate under the terms of the Blue contract and entitles the Guild to a Court order compelling the Employer to submit to arbitration in accordance with the contractual procedures.

**COUNT TWO**

33. The Guild repeats and realleges the allegations set forth in paragraph 1 through 32 above as if fully set forth herein.

34. The Employer's failure and refusal to provide substantially equivalent retiree coverage and pay the full premium expense for that coverage for the duration of the retired employees' lifetime constitutes a breach of the Blue contract, in violation of Section 301 of the LMRA. Should the Court find that the Guild's retiree coverage grievance is not arbitrable, the Guild is entitled to a court order finding that the Employer breached the terms of the Blue contract; and making the Guild and the retirees whole for the Employer's breach of contract.

**WHEREFORE**, the Guild is entitled to the following relief:

1. An order compelling the Employer to immediately arbitrate the Guild's retiree coverage grievance in accordance with the terms of the Blue contract;

2. An order finding the Employer in breach of the Blue contract and further assessing judgment against the Employer for violating the terms of the Blue contract by the conduct outlined above, and further awarding full remedial relief and damages, including the reimbursement of all premium expenses assessed against the retirees, plus interest;

3. An injunctive order, enjoining and restraining the Employer to rescind all actions taken in violation of the Blue contract and mandating the Employer's continued compliance with the terms of the Blue contract regarding retiree health care coverage for the duration of the retirees' lifetimes;

4. An order granting such other relief as the Guild and the retirees may be entitled to under the circumstances, including attorneys' fees, costs and disbursements incurred by the

Guild in bringing this action;

    5.  Such other and further relief as the Court deems just and appropriate.

        Respectfully submitted,

        HAMMOND & SHINNERS
        7730 Carondelet Avenue, Suite 200
        St. Louis, MO 63105
        (314) 727 1015 (p)
        (314) 727 6804 (f)

        _____

        Richard E. Shinners, #4355
        Michael A. Evans     #534636
        Attorneys for Plaintiffs